All right, the United States Court of Appeals for the Federal Circuit is now open and in session. Today's United States and this Honorable Court, please be seated. Good morning, our first case for today is 2015-1488, Pentair Water Pool v. Hayward Industries. Mr. Bromberg, please proceed. Thank you, Your Honors, and good morning and may it please the Court. This case involves fluid heaters and the claim tube sheet is fully supported by the specification of the 804 patent without restriction on the tube sheet material, so the contrary ruling  The Court used flawed analysis and also violated the basic rule that inferences should be drawn in favor of the non-moving party here, Hayward. The evidence strongly supported Hayward's position that there was adequate and indeed full disclosure of the tube sheet of claims 43 to 45 and 47. The tube sheet is first described in the 804 patent by its function, which is unifying tubes into an integrated assembly and no particular material is mentioned because the person of skill in the art would know that heat exchangers and their tube sheets had been made of metal for over 100 years. Is this a circumstance where, you know, you sort of got what you asked for with respect to the claim construction and then had to live with the breadth of that construction? I don't think so, Your Honor. I think the claim construction fully supported the proposition that there is written description of what's in the claim. The functional description was in the 692 patent, the original application, original claim 29 of that application actually had a tube sheet, a pair of end plates it was referred to, with no restriction as to the material. That's in the parent patent? In the parent application. These originally filed claims in this application all limited themselves to stainless tube steel tube sheets. Tongue twister. Every one of the originally filed claims in this application were limited. Not just a non-corrosive resistant, but to stainless steel.  I don't think that's correct, Your Honor. I think there are some claims that do limit to stainless steel, and there are other claims that don't. In the originally filed claims associated with this application, you think that there were tube sheet claims that had no restriction on corrosive resistance? You mean on the 077? I mean on this patent that's at issue for us. The 804. The 804. Okay. The first application went abandoned, then it was renewed in the 077 application, which emerged as the 804 patent. So there was no patent that came off of the parent application. So if you look at them together, you see tube sheets described in the original without restriction as to material. But not in the original 804 claims? Not in the claims that were filed in the 077, correct, Your Honor? 077 is the application that led to 804? Yes, Your Honor. Yes, Your Honor. And in fact, Pentair admits there's no material limitation in the original claim 29, or in figure 2. Figure 2 introduces the alternative tube sheet that's in column 7, sorry, column 8, starting at line 29. And that was new material in the 077 application. I'm sorry, that was not new material. That was new material in the 077 application, but figure 2 in the original was in the 692 and repeated verbatim in the 077. And that's the one that I quoted that described the tube sheet in terms of its function of collecting the tubes into a unified structure. So, that material is carried forth verbatim, it provides disclosure of tube sheets made of whatever material would be understood by a person of skill in the art. And that, in fact, was metal, cast iron, steel, stainless steel. Well, it doesn't actually use those phrases, those words. It does not, Your Honor, but the prior art that's discussed in the patent and that is cited on the, during the prosecution of the patent, does use those terms. And Pentair's own- But those are, that's the very prior art that you're disparaging. Not disparaging, Your Honor. There's no disparagement of the prior art. It's the district court that said that stainless steel is an essential element of these claims- Well, corrosion resistant material. Or corrosion resistant- I mean, it starts with the abstract. I mean, I know that the abstract doesn't mean much, but when you, when you look at it and the very first place you see anything in this patent talks about how important corrosion resistance is, and then it's repeated over and over and over and over, I don't know how you can say that you're claiming anything other than corrosion resistant material. Well, Your Honor, there are many places in the, in the specification where it is not, there is not a requirement of corrosion resistance. And this is a, this is a patent where you have some claims directed to the tube sheet, some directed to the burner assembly, some directed to the- Are there many places where it uses the word tube sheet and doesn't include the word stainless steel or corrosion resistance? Well, it uses the word, the words heat exchanger, Your Honor, because- I don't, I'm not talking about the heat exchanger, though. I mean, where, the issue is whether the tube sheet itself has to be stainless steel or corrosion resistant. Right, and I think, Your Honor, that the heat exchanger is the structure that includes the tube sheet, and certainly any person of skill in the art understood that. And we presented evidence- Can you answer my question, though? My question is, are there many places in the patent when you specifically refer to tube sheet that it doesn't include the word stainless steel or corrosion resistant, modifying tube sheet? I think, Your Honor, that there are a couple of places where it refers to the tube sheet metal. That's in 9, 910. Where? Pardon? Column 9? Column 9. What lines? Where in column 9? Am I supposed to just look at the whole column and know what you're talking about? My apologies. There is reference to a flowing of the tube sheet metal in lines 9 to 10, and there is also fluid deformation of the tube sheet metal referred to in column 13. But before all of that, before all of that, in column 6, line 34, you have the sentence, a pair of end plates, 72, 74, are soldered, welded, or otherwise affixed in watertight fashion on each terminal. So soldering and welding, of course, refers to a metal structure, and the whole- Well, that's not tube sheets. That's talking about the end plates. The end plates are the same as the tube sheets, Your Honor, as you will see in column 8, line 29. Figure 7 shows an alternative tube sheet end plate, it states there, showing that those are the same things. Yes, but if you finish reading the rest of those lines, it says the tube sheet is preferably formed from a thin plate or sheet of stainless steel. Yes, that's correct, Your Honor. That is a preferred embodiment introduced. But I understand that if it's mentioned one time or maybe a couple times when it's describing one specific example, it's preferred embodiment. But almost every single time it uses the word tube sheet here, it talks about it being a where it talks about the importance of the corrosion resistance and throughout. Yes, you can pull out some isolated incidents where it's discussing other aspects of how the tube sheet is formed and the like, but I don't see- I mean, when you have- what's the standard here? I mean, isn't it- if almost everything talks about this tube sheet being stainless steel or corrosion resistant, isn't that enough for disclaimer? I respectfully know, Your Honor. What would you require? The- first of all, what is required to meet the written description requirement- No, I want to know what you think is required for disclaimer. I will answer your question if I may. It's disclosure. The disclosure is in this patent, and then if you look for a disclaimer, you have to see an explicit reference to this patent- this invention does not cover- You think you have to have magic words that say, we disclaim X. It's not magic, but there has to be enough there so that it's clear that it does not reach to cover the other claims. Does it have to say something about, this patent does not cover? Or can it say, can basically every single discussion be directed at a specific, more narrow claim term? If it's- if throughout this- let's assume there aren't any other references. You've found a few, but there weren't references where they used tube sheet without the word stainless steel. Every time they used the word tube sheet, they modified it by stainless steel. But they didn't say, this doesn't cover, or this isn't limited to stainless steel. Would you have a disclaimer there? I think that would be a tougher case for us, Your Honor, but I think there is disclosure that contradicts the determination of a disclaimer. And of course, this specification- So how do we determine that? I mean, because I read the specification, and it's talking about corrosion-resistant materials for the tube sheets. It uses stainless steel most of the time. It talks about the importance of corrosion resistance. That seems to be a pretty important part of this invention. And I don't see anything but stray references to non-corrosion-resistant material. Doesn't that meet a disclaimer standard? Your Honor, I believe it does not, respectfully. And I think if the disclosure is in the patent that supports the claims, of course, a patentee is entitled to draw claims to various things. We presented the proposition that what's really interesting in this patent is the plastic header. Plastic headers had not been used up to that point, over 100 years. But it repeatedly talks about the fact that the corrosion resistance is really important because we're talking about pool water. Well, sometimes we're talking about pool water. My problem is, and this goes back to my original question, is if I were to construe this claim under Phillips, I would say that the claim requires corrosion resistance. So then you've got a non-infringement, but you've still got a valid patent. The problem is you ask for a different claim construction that I think really makes sense. And that's not at issue before us. So now you've gone and put your patent at risk. Respectfully, Your Honor, we disagree. We think that the disclosure is there to support it under the written description standard. That corrosion resistance should not be read into the claims at issue here. There's one claim that calls for a corrosion-resistant tube sheet. That's claim 46. And under the doctrine of claim differentiation, what does that claim mean if the other claims all have to include corrosion-resistant in them? There are claims in this patent that cover tube sheets, corrosion-resistant tube sheets, stainless steel tube sheets, and claims that cover plastic headers. And the combination claims that we're looking at here, 43 to 45 and 47, all cover a plastic header on a heater design. That was something that had never been seen before in the history of these products, although they had been made for over 100 years. I don't know what that, what does that have to do with whether or not the tube sheet is limited to stainless steel or corrosive-resistant material? Well, the inventor is entitled, Your Honor, to present a claim that's emphasizing the combination of elements, including the new plastic header, without restricting the tube sheet. The tube sheet could be made of cast iron. It could be made of steel. It could be made of stainless steel. But if you didn't claim, put that in your specification, then you don't get it by adding new, broader claims later on. I mean, the original claims that were associated with this patent did use stainless steel every time it used the word tube sheet. Well, Your Honor, respectfully, there was not a broadening over what is disclosed in the specification. When you understand it from the perspective of a person of skill in the art who knows that you make a heat exchanger and its tube sheets or end plates out of metal, and that had been the practice. I just want to explore the disclaimer concept with you, and let me see if we can figure out, basically, along a spectrum, what kinds of things would amount to disclaimer. So, certainly, I would think, in order to be reasonable, you would agree that if the metal won't work because it'll be too heavy and it'll corrode, period. That's even if the claim later just said tube sheet and didn't say stainless steel, would that amount to a disclaimer in your mind? I believe it would, Your Honor. So even though it's not saying, don't make it out of this, that, or the other, it's an implicit disclaimer because it's telling you affirmatively to do something and saying, and it's conveying to the world, this is the scope of my invention. I'm aware that you could make it out of other materials. It's not a matter of being uninformed. It's a matter of carving them out for a specific reason. At the opposite end of that spectrum is just repeatedly talking about preferably using stainless steel or preferably using a corrosive-resistant material without, for example, disparaging non-corrosive-resistant materials. None of these are your case. I'm trying to set out two opposite ends of the spectrum, and then we'll kind of cabin in on your facts and see which end they're... So I just want you to know where I'm going. So you don't fight me too much on what I think are opposite ends of the spectrum. So the other opposite end would be this example, right? Where just because you refer to something as a stainless steel tube sheet, if you never explain why the stainless steel is important and should be preferred over other materials and don't disparage other things, that wouldn't amount to a disclaimer in your view, right? Correct. Yes. And so what this case is, there are definitely cases where we've had where we've said, you don't need magic language. So you don't need to say, no disclaimer. But usually there's something more than just using it repeatedly in the spec. Like there's something like the present invention is, or language that really makes it clear to the world. Is your argument that there isn't any such language as that in this specification? Well, there is language that says the present invention includes, and then it lists a bunch of things, but it does not say it's limited to that. That's the only way you can do it. And even in your far spectrum case, your honor, if there were language that said you should do it this way, but there is other disclosure in the specification that supports the claims that are presented and approved by the patent examiner, then I think we do have support. But the problem is I don't see that other disclosure in this specification. I think that my colleagues asked you to identify where in the spec you talk about a tube sheet in a manner that isn't limited to stainless steel or at least corrosive resistance, maybe even stainless steel. And you haven't identified anything for us. I mean, you pointed to the top of column nine, but that is the continuation of a discussion of figure seven, which begins with the tube sheet 108 is preferably formed of a thin plate of stainless steel. And then even at the top of column nine where you pointed to the word tube sheet, it was always tube sheet 108. So that's a continuation of that same discussion. And I think this isn't just a matter of they threw in stainless steel. He explains, this inventor explains all the reasons why stainless steel is important. It's lighter weight. And he stresses how lightweight it is. I mean, plastic might be even lighter weight, but he then disparages plastic a little bit in other places, but for different parts, not tube sheets, I understand. But I guess I'm struggling with where this lies on that disclaimer spectrum. It's somewhere more towards the middle for sure. But I mean, the present invention language captures the notion of the corrosive resistance. It's stressed throughout. Non-corrosive resistant materials are disparaged. Maybe that picture taken together, this isn't a case where you just tie the word stainless steel to the tube sheet. Maybe you have all these other indicia that are enough for disclaimer. Well, Your Honor, respectfully, the first time that a tube sheet is mentioned in column six, lines 34, 35, it refers to a pair of end plates. It describes them by their function, which is to unify the tubes into an integrated assembly. Did you say column six? Column six. A pair of end plates, yes. A pair of end plates, 72, 74 are soldered, welded, or otherwise affixed in watertight fashion on each terminal end of the tube set, unifying the tubes into an integrated assembly. That tells a, there's no restriction on the material there. The first time that there is any mention of a tube sheet. I don't understand that. I mean, yes, when you're talking about the descriptions and stuff, in the summary of the invention paragraph in column three, it says the heat exchanger includes a pair of parallel stainless steel tube sheets. Yes. I mean, that's the first, I'm not going to go back from column three to see if it's but that's the first time tube sheets are mentioned, or at least before column six, and it says stainless steel. Your Honor, you are correct in the summary of the invention. But when this patent is describing in detail what it's disclosing, the first reference it makes to end plates or tube sheets is in that column six, where it does not restrict them as to material. But everything else does. Even that preference language that you cite in column eight, I agree with the district court that that preference language more naturally refers to the width and not to the material of the tube sheet. So I don't think that supports you either. Everything here talks about how important corrosion resistance is. So I don't know how you can say that you've invented something without a corrosion resistant element just because you have one statement where it doesn't actually mention material. It doesn't mention corrosive material. It just doesn't mention material at all. It doesn't mention material at all. And that leaves it to the person of skill in the art who's been making these devices out of cast iron, which the patent says is not corrosion resistant, and out of other if they serve a purpose for the lifetime of the product. So we think it is disclosed there. And Your Honor, with respect to the reference in figure in column eight, it starts by saying figure seven shows an alternative tube sheet, an alternative tube sheet. That language cannot be ignored. Okay, Mr. Bromberg, we are way over time. So I'm going to have to cut you off for now. I'll restore a minute or two of rebuttal time. But we need to move on and we need to hear from Mr. Voland. And Mr. Voland, if you need a little extra time, obviously, we'll accommodate because we allowed Mr. Bromberg to go way over. Thank you, Your Honor. Good morning, and may it please the court, I'm Mark Voland for- Okay, I have to ask one big picture business question before we go any further. Is Pentair a pool heater and spa company? Yes. Are you actually arguing for non-infringement purposes that yours doesn't infringe because it corrodes? And how the heck can you do that as a matter of business judgment? How in the world can you argue for non-infringement? Our product doesn't infringe because it's awful. I'm baffled. Your Honor, you're talking about claim 46? Yeah. Yes. Yes. Okay. I mean, the business people signed off on this? Sure, Your Honor. They had to have, right? There's a fundamental difference, okay? The tube sheet in Pentair's products doesn't touch the water. Okay, it's a dry tube sheet design. So you have the, let's say it's a vertical tube sheet with holes in it, and these heat exchanger tubes come around and they go through the holes. They go right through the tube sheet. So the water is within those tubes and not within the, it doesn't pass through the tube sheet material. It doesn't contact the water on either side of the tube sheet. Do you have a pool heater? Do I? Uh-huh. I do. There's not a part in there dry. Not a part in that thing that's dry at any given time when it's operating. But anyway, all right, I'm going to let you off the hook because it doesn't really have a lot to do with what we mainly want to talk about. I would just sort of laughed out loud when I read that part. Stainless steel is obviously more expensive. So if Pentair can get away with using carbon steel, which works structurally, fine. But if it's exposed to the water, sure, it's going to corrode and it's going to give the same problem that the 804 patent causes. So how does your water not touch the tube sheet? I'm shocked. I mean, this is important to Claim 46. This is important on the issue of non-infringement that we asserted as an alternative ground based on the in-communication with language as well, Your Honor. So if you have a tube sheet that's like this, okay, and you've got a plastic manifold on one side that houses water, okay, with an inlet and an outlet, and you've got heat exchanger tubes on the other side, okay, those tubes, and this is what's described in the 804 patent largely, can come up and then engage the tube sheet and attach to it here so that the water can go through the hole and into the manifold on the other side and circulate, okay, through the tubes, through the manifold, in and out of the manifold. So one side of the tube sheet is wet in an 804 patent type design or some heater type designs and it stays and it can be wet where the water comes in here too. But in Pentair's products, the tube goes right through, okay, and the tube itself attaches to the plastic manifold so there's no water circulating against the back side of the tube sheet. It's called a dry tube sheet design versus a wet tube sheet design. I hope that explains it. Okay. I'm going to jump right into questions here. The piece about your argument that I'm not comfortable with is your reliance on this essential elements test. Is there really such a test? I wouldn't call it essential elements in quotes. If we use that term, it may have been a little unclear. I look at the issue as when you get into written description, the cases, of course, are you look at the four corners. You take the document that was filed, you match it up with here, what was later claimed,  Was there possession? Okay. So here what you have is a disparagement in the background of cast iron, corrosion and rusts, et cetera. The very next paragraph down in the summary, it says the objects of the present invention and the problems in the prior art are solved by the present invention and it lists A, B, C, D, E, F, G. One of those is stainless steel tube sheets. That specifically addresses the problem. And in this court's pacing technologies case, Honeywell, CIMED, others we cited. The present invention language, when it's set up just like that, it creates what pacing technologies called a quote unquote unmistakable disclaimer. Now here in the 804 case, take the 077 application. If this is a disclaimer and if you're right, then why isn't the problem, I mean, I don't see how this fails written description. It's just that the claims are not properly construed. Claim construction is a question of law. Parties can't stipulate to it. It has to be the predicate that's decided before infringement or validity. So I mean, it's kind of like you're making a case for yourself and a case against yourself at the same time because I don't see how you jump to written description without first construing the claims. And if you're right about the disclaimer, then the claims are narrow. This, Your Honor, was how the claims were construed in the infringement contentions that we received from the owner of the patent. Okay, so just like came up in Mr. Brownberg's argument. They want to take a broad claim construction. In our view, they clearly exposed themselves. In our view, when we picked up this patent and looked at it and looked at the history and we looked at the summary of the invention. Yeah, I see you have a question. They expose themselves and they take a broad claim construction, but it's a question of law. Now, let me morph this a little bit. And I recognize this is a different scenario. But what's bothering me is if this were a case of statutory interpretation, they may be asking us to take a broad view of the statute because that's what they need in order to prevail on whatever kind of claim they've raised. But we're not necessarily going to accept that broad view of the statute if it's incorrect. And especially if it would result in the statute being unconstitutional, for example. So why ought I to accept a broad but improper view of the claims that result in their invalidity? Because that's the patentee's decision to assert them of that scope. And it was the party's decisions during the lawsuit to litigate them of that scope. And there was three years of litigation over that scope all the way through summary judgment where Judge Wu made very specific findings on both the written description as well as the invalidity prompts, Your Honor. So why didn't you argue for a narrower claim construction? That you were more interested in knocking out the patent than in having a finding of non-infringement? Well, you know, if we had done that, Your Honor, I would have been accused of reading limitations from the specification into the claim. It's always a two-edged sword, okay? So you've got in Claim 43 and 47, the independent claims, you've just got the tube sheet, unrestricted as to material. If we go and argue, oh, Your Honor, that should be construed really narrowly, okay? The specification is all about stainless steel and corrosion resistance. Okay, what we're going to hear back is you're reading limitations from the spec into the which specifically calls out corrosion resistance. So that's where it is. There's no... It just seems like, I understand, rock in a hard place. I get it. But it seems like the best way to do these things is to argue in the alternative, you know, for you as the defendant. These claims are narrowed and should be construed as X. And if you're not going to construe them as X and going to construe them broader, then the spec doesn't support it. Because, you know, there's a lot of canons of claim construction, and among them are so as to assure its validity if there are multiple possible constructions. And your whole argument is there's a disclaimer in this spec. So it's hard not to certainly be awfully tempted to reconstrue the claim appropriately. Now, it would still result in your non-infringement if we agree with you on Claim 46. Because this claim would devolve into an identical scope, right? It could well under your hypothetical, Your Honor, yes. Yeah. But assuming we can't get to claim construction because it's not before a zone appeal. Right. Then, yeah, part of the problem is you clearly fall somewhere in the middle on Judge Moore's spectrum. And so, you know, so what are your strongest points for purposes of a disclaimer? Sure. Column three clearly disparages cast iron, which. Which part? I mean, take me line, item, number, whole thing. Sure, Your Honor, I'm happy to. Column three. Right at line 39, cast iron has been utilized in heat exchangers for economic reasons, but when subjected to even mildly corrosive liquids, oxidizes or dissolves. Okay, oxidizes or dissolves means rust. The district court made a finding that it's undisputed that the tube sheets in Pantera's accused heaters rust. And that factual finding hasn't been and can't be shown to be clearly erroneous. So it's jumping to 46 for a minute, but that's one aspect. The second aspect is. What is this discussion of cast iron going to the tube sheets? Sure, that when it says heat exchangers, a heat exchanger is formed of the tube sheets and then the tubes which cross between them, essentially. So what you then see is the summary of the invention, which has been discussed. And I don't think there's any dispute about, okay, the present invention. And you've got all the disclaimer cases based on the language of the present invention. Where are you jumping to the present invention? Okay, sorry, Your Honor. Column three, the heading summary of the invention. Okay, line 54, the problems and disadvantages associated with conventional devices and methods, et cetera, are overcome by quote, the present invention, which includes. And it goes on and lists the elements. It doesn't say anything about a tube sheet or a stainless steel tube sheet or a corrosive resistant tube sheet. It does at line 64 and 65. In a different sentence, not containing the present invention language. Your Honor, but I would respectfully submit. And by the way, this is the only complaint I have about your brief, but I do want to point it out because it did jump out at me and bother me. In this exact point, you put present invention dot, dot, dot, and then the rest of that other sentence about tube sheet. Okay. And I found that to be a disingenuous and overbroad claim on your part, because you did it in a way that implied it was all part of the same sentence. Please don't do that again in the future because you've got a very credible position and you don't want to undermine the credibility of your own position by doing something overreaching. Got it, Your Honor. And I would just note that, again, the heading itself is summary of the invention, Your Honor. And in the next sentence, it talks about the present invention. And our position that you just referenced was intended to encompass the entire paragraph, which is how we read it as the present invention. The next aspect that goes to a disclaimer is there's nowhere in the detailed description that takes the tube sheet. Well, wait a minute. If I were to read everything in that whole paragraph as the present invention, then you're going to tell me I should read this patent as limited to a front header, which is plastic, a rear header, which is plastic. They have to be removably attached. Do you understand? The difficulty with taking a present invention language that appears in one sentence and then applying it to every aspect of the entire paragraph is that would amount to an awful lot of disclaimer suddenly. And I don't know if that reach is clear and unmistakable. Now, maybe the difference is everything else in this patent screams tube sheets are stainless steel. Maybe that's the answer. But maybe it's not the magic of that one sentence. What do you think? Yeah, Your Honor, again, we think that in the summary, stainless steel tube sheets, a person of ordinary skill in the art reading that paragraph would come away that that is the only possible material. Later references to- And you think it's stainless steel, not even corrosive resistant. You think it has to be stainless steel? We asserted that, but we accept corrosion resistance because it reaches the same conclusion. It's a fine point. But the rest of the description, it never broadens that description. It may say tube sheets referring to figure two by the number. OK, but for example, whereas Mr. Bromberg pointed to column eight in the middle line 29 discussing discussing tube sheets 108. If you go down further at line 61 of column eight, it's very clear that it says stainless steel tube sheet 108. And we respectfully submit there's no doubt at all that the specification as a whole discloses only stainless steel for the tube sheets. And I would note that- Isn't column nine actually better for you? Yeah, and I'm working my way there, Your Honor. But I was asked to show specifically where we contend the disclaimer comes from. Column nine then, after that discussion in the bottom of eight, line 18, those couple sentences. The stainless steel sheet metal tube sheet is used in combination with expanded copper or stainless steel tube sheets and plastic headers  and the next sentence goes on to describe the advantages of avoiding stains, stained water and mineral deposits in the pool water. We also note, as Judge Hughes pointed out, the original claims filed with the 077 were all limited to stainless steel tube sheets. The court in Gentry Gallery specifically gave that fact some weight in the overall calculus and we have the site in our brief. Mr. Bromberg cited the 692 parent application, but the parent is not incorporated by reference into the 077. That argument only arose in the reply, so we didn't address it in our intermediate brief. But this court's president, it's Inray D. Seversky, it's a CCPA case 1973-474-F2-671, makes clear that merely characterizing an application as a CIP doesn't serve to incorporate the parent. And mere reference to a prior application doesn't allow you to rely on the prior application for disclosure support. And Kiewert also argued that certain claims, like claims 22-42, and Mr. Bromberg referenced column 13 in his argument, those claims didn't exist when the 077 was filed. So they simply don't count in determining whether there's written description. I think we have your argument. Are there any other points you want to touch on that you feel like you haven't had an opportunity to? Because we let him go over, so I'm willing to be generous, but if you don't need to, that's good too. I'm okay here. Okay, very good. Mr. Bromberg, how about two minutes of rebuttal time, please? Thank you, Your Honor. I agree with Mr. Boland that stainless steel is more expensive. And indeed, economical cast iron is an advantage of cast iron. So it's not disparaged for that. And really, the invention here is a series of inventions. The plastic header is very important. Corrosion-resistant tube sheet is very important. You don't have to claim all of them in one claim in order to have a viable claim that is fully supported by the specification. And on the issue of corrosion-resistant, Your Honors, there was no claim construction of that term. It just didn't come up. We submitted a declaration from Dr. Clark, an expert in this field for 40 years, who has seen structures in furnaces and fluid heaters and what have you that were so corroded that they crumbled into dust. And he thought that something that does not have that experience where the component lasts for the lifetime of the product, even though it has some surface rust, still meets the definition of corrosion-resistant. But in Column 9, it talks about the importance of corrosion-resistance being that the water is not discolored. That's not the same as completely crumbling into dust. That is the same as rust, right? Well, Your Honor, I think that it depends on the structure of the tube sheet. As Mr. Boland was explaining, you can have a wet tube sheet environment and a dry tube sheet environment where you don't permit the water to get in touch with the tube sheet metal. And therefore, the rust will not get into the water. So that's another aspect of the invention. Yeah, but that's not what Column 9 talks about. Column 9 talks about tube sheets that are corrosion-resistant so that even when the water goes through them, you're not going to discolor the pool water. That may be, Your Honor, but it also talks about the configuration  and you put the tubes through. The tubes are always made of copper, almost always made of copper. So you put the tubes through them and then you expand the tubes to fit tightly and then the water is going to run through the tube sheet without touching the tube sheet. So that is a configuration that's explicitly laid out in Columns 8 and 9, as well as soldering or welding those tubes to the tube sheet. So those are all alternative designs that this invention, this set of inventors put forward as ways to improve. Okay, Mr. Bromberg, I think we have your argument. Sorry to cut you off, but we have to move on for today. The case is taken under submission and I thank both counsel for their argument. You don't need to switch sides. I hope you weren't